```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  08/16/2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
GARTH MARCHANT, *et al.*,                                   :
                                                            :
                                    Plaintiffs,             :    13 Civ. 5493 (KPF)
                    v.                                      :
                                                            :    OPINION AND ORDER
NEW YORK CITY BOARD OF ELECTIONS,                           :
                                                            :
                                    Defendant.              :
                                                            :
------------------------------------------------------------X

**KATHERINE POLK FAILLA, District Judge:**

Plaintiffs, proceeding *pro se*, seek a preliminary injunction requiring the New York City Board of Elections (the "Board") to place the name of Plaintiff He Gin Lee ("Lee") on the Democratic primary ballot for the office of Mayor of New York City (the "primary ballot"). For the reasons set forth in the remainder of this Opinion, the request is DENIED.

## FACTUAL BACKGROUND

**A.    He Gin Lee's Mayoral Petition**

The following facts are taken from Plaintiffs' Complaint ("Compl."), or from the transcript ("Tr.") of the hearing on the Order to Show Cause held on August 14, 2013 (the "August 14 hearing"). Plaintiffs are New York City voters. (Compl. ¶ 3). Three Plaintiffs are African-American, and five Plaintiffs are Asian-American. (*Id.* ¶ 10).[1] Plaintiff Lee is a Democratic candidate for mayor, and the first Korean-American to run for that office. (*Id.* ¶¶ 5, 12).

---

[1]   Three of the Plaintiffs are signatories to Lee's petition, and one Plaintiff is a witness to that petition. (Tr. 29, 58-59). Defendant has suggested that because Plaintiffs

On July 11, 2013, Lee filed a designating petition (the "petition") with the Board in order to be included as a mayoral candidate on the ballot for the Democratic Party primary that is to be held on September 10, 2013. (Tr. 3-4, 44). *See generally Rivera-Powell* v. *New York City Bd. of Elections*, 470 F.3d 458, 461-62 (2d Cir. 2006) ("To be placed on a party's primary ballot, New York law requires an individual to submit a 'designating petition' meeting certain formal requirements. A designating petition comprises 'petition volumes' (bound groupings of sheets bearing the signatures of registered voters), each with an identification number, and a 'cover sheet,' which contains a variety of information including the identification numbers of the petition volumes the candidate is claiming." (internal citations omitted)). Lee's petition contained approximately 6,000 signatures, along with the required cover sheet. (Compl. ¶¶ 5-6; July 13, 2013 Lee Cover Sheet). [2] The next day, on July 12, 2013, the Board mailed Lee a letter confirming that it had received the petition and

---

Marchant and Brown are neither signatories nor witnesses to Lee's petition, they do not have standing to bring this action. (Tr. 29-30). The Court declines to reach this issue because, as discussed herein, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits, and thus have failed to demonstrate a basis for the injunctive relief they seek.

[2]   Plaintiffs' Complaint, as initially provided to the Court and filed on ECF, did not include copies of any of the exhibits cited therein. To remedy that omission, Plaintiffs provided the Court, but not the Board, with unmarked paper copies of the exhibits at the August 14 hearing. The Court instructed Plaintiffs to file copies of the exhibits on ECF as soon as was practicable. Plaintiffs submitted paper copies of the exhibits to the Pro Se Office on August 16, 2013, but as of the filing of this opinion, they had not yet been docketed on ECF. As such, the documents will be referred to herein by the date and description of the document.

stating its understanding that he was a Democratic candidate for mayor. (Tr. 19, 41-42; July 12, 2013 Board of Elections Letter).[3]

On July 15, 2013, the Board sent Lee a non-compliance letter stating that "the name of the party [i.e., his political party affiliation] was omitted from the cover sheet." (Compl. ¶ 7; *see also* July 15, 2013 Board of Elections Letter; Tr. 4). Lee was given an opportunity to provide that information, and did so in an amended cover sheet, which he filed with the Board on July 17, 2013. (*Id.* ¶¶ 8-9; July 17, 2013 Lee Amended Cover Sheet). The amended cover sheet, however, contained a different error. It failed to comply with Primary Rule C4, which requires an amended cover sheet to contain a signed and dated authorization that states: "This is to certify that I am authorized to file this amended cover sheet." *See* Designating Petition and Opportunity to Ballot Petition Rules for the September 10, 2013 Primary Election, promulgated by the Board of Elections in the City of New York, and pre-cleared by the U.S. Attorney General on June 11, 2013 (the "Primary Rules").[4] Consequently, on July 19, 2013, the Board invalidated Lee's amended petition, and notified Lee that his name would be removed from the primary ballot because the amended

---

[3]   The July 12 letter indicated no problems with Lee's petition, and instead focused on the process specified in New York State Election Law § 6-146(1) for the acceptance or declination of the designation of nomination. At the August 14 hearing, Defendant explained that at the time this letter was mailed, the cover sheets for all candidates had not yet been reviewed by the Board. (Tr. 41-42). As the Court noted, it may behoove the Board to clarify in future confirmation letters that the Board has not, by the time of the letter's issuance, completed its review of the putative candidate's petition.

[4]   A copy of the Primary Rules was provided to the Court at the August 14 hearing by Plaintiffs. The Primary Rules are also available online at: http://vote.nyc.ny.us/downloads/pdf/documents/boe/2013SeptemberPrimaryElection/Final%20PRE-CLEARED%20and%20ADOPTED%20-%20Sept%2010%202013%20PRIMARY%20-Desgingating%20%20OTB%20Rules.pdf.

cover sheet did not contain "the authentication required by Rule C4." (Compl. ¶ 9; July 19, 2013 Board of Elections Letter).

**B.    The Instant Litigation**

Plaintiffs commenced this action on August 6, 2013, by filing, in addition to the Complaint, a proposed Order to Show Cause and Preliminary Injunction. (Dkt. #1, 2).[5]  On August 7, 2013, the Court issued an Order to Show Cause, directing the Board to appear for a show cause hearing on August 14, 2013, to demonstrate why the requested relief should not be granted.  (Dkt. #4).  A hearing and oral argument was held before the Court on August 14, 2013, and was attended by Plaintiffs and counsel for the Defendant.

## DISCUSSION

**A.    Legal Standards**

The issue presently before the Court is whether to grant Plaintiffs' request for injunctive relief.  If a party seeks injunctive relief pursuant to which the Court commands some "positive action," it is properly considered a mandatory injunction, and is subject to a more exacting standard than a preliminary injunction.  *Tom Doherty Assoc., Inc.* v. *Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *see also Abdul Wali* v. *Coughlin,* 754 F.2d 1015, 1025 (2d

---

[5]    Before this action was filed, Plaintiff Lee initiated, and withdrew from, a New York Supreme Court proceeding to validate his petition under Article 16 of the New York State Election Law.  (Tr. 7-11, 16); *see* N.Y. Elec. Law § 16-102 (providing that any appeal from an invalidity decision regarding a petition shall be taken "within three business days after the officer or board with whom or which such petition was filed, makes a determination of invalidity with respect to such petition").  Lee initiated the proceeding on or before July 25, 2013, and appeared, along with his counsel, at a conference before a special referee.  (Tr. 9-11, 16).  While Defendant argued that this state court proceeding precludes the instant proceeding (Tr. 28), the record does not contain sufficient information for the Court to make such a determination at this time.  In any event, because this Court denies Plaintiffs' request for a mandatory injunction, it need not reach this issue.

Cir. 1985); *compare Latino Officers Ass'n, New York, Inc.* v. *City of New York,* 196 F.3d 458, 462 (2d Cir. 1999) (explaining that preliminary injunctions, which maintain the status quo before a trial on the merits, require the moving party to demonstrate irreparable harm in the absence of an injunction and a likelihood of success on the merits).  Indeed, mandatory injunctions should be issued "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Doherty,* 60 F.3d at 34 (internal quotations and citations omitted); *see also SEC* v. *Unifund SAL,* 910 F.2d 1028, 1039 (2d Cir. 1990) (holding that an injunction going beyond the preservation of the status quo requires "a more substantial showing of likelihood of success").

Plaintiffs seek a mandatory injunction by asking the Court to order the Board to place Lee's name on the primary ballot, which it is currently not.  The Court therefore considers whether Plaintiffs have demonstrated a "substantial showing of likelihood of success."  *Unifund SAL,* 910 F.2d at 1039.

**B.     Application**

    **1.     Plaintiffs Are Unlikely to Succeed on the Merits**

Plaintiffs bring claims under "the National Voting Rights Act (NVRA)[6] 42 U.S.C. §15483(a)(8), 42 U.S.C. §1983 and 1988, and … the First and Fourteenth Amendments." (Compl. ¶ 2).  In particular, Plaintiffs allege that

---

[6]     The NVRA provision cited by Plaintiffs, as Defendant correctly notes, "relate[s] solely to maintenance of voter registration rolls for *Federal* elections, not state or local elections, of which this is one." (Def. August 13, 2013 Letter at 2, Dkt. # 7) (emphasis in original).  Plaintiffs clarified at the August 14 hearing that they invoked the NVRA because they were members of protected classes. (Tr. 48).  While that may be so, Plaintiffs have failed to properly state a claim under the NVRA, and, as such, are unlikely to succeed on this claim.

"the fact that voters are denied a choice to vote for a candidate of their choice because of a technical error violates their [F]irst [A]mendment right[] to freely associate with a candidate of their choice." (Compl. ¶ 13). Plaintiffs further allege that such a denial "violates the [F]ourteenth [A]mendment right[] to due process." (*Id.*). The Court considers Plaintiffs' constitutional claims in turn.

### a. Due Process Claims

Plaintiffs ask the Court to "invalidate and hold unconstitutional the rules of [t]he Board of Elections of The City of New York, that requires a mistake on a cover sheet to invalidate the entire petition." (Compl., "Second Cause of Action"). While their Complaint was unclear on this point, Plaintiffs clarified at the August 14 hearing that it is their contention that the New York Election Law is unconstitutional as applied by the Board. (Tr. 49, 58). Thus, the Court analyzes whether Plaintiffs were deprived of their procedural due process rights as guaranteed by the Fourteenth Amendment, which provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV; *see generally Daniels* v. *Williams*, 474 U.S. 327, 331 (1986).

In a procedural due process analysis, in order "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon* v. *Burch,* 494 U.S. 113, 126 (1990). To evaluate the adequacy of due process afforded by the state's procedures, the court must weigh: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous

6

deprivation of such interest through the procedures used" and "the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge,* 424 U.S. 319, 335 (1976).

At the August 14 hearing, Plaintiffs raised numerous arguments, all of which distill down to a contention that the Board's invalidation of Lee's petition due to two separate cover sheet errors was unfair and discriminatory.[7] Plaintiffs do not, however, dispute that Lee was afforded an opportunity to rectify the first cover sheet error, or that he was given the opportunity to — and did — initiate an Article 16 proceeding in New York Supreme Court to validate his petition. (Tr. 7-11, 16). Indeed, at the Article 16 proceeding, Lee was represented by counsel, and was able to advance his arguments before a special referee. (*Id.*).[8]

---

[7] At the August 14 hearing, in support of their argument that the Board's invalidation for cover sheet errors had a discriminatory effect, Plaintiffs referred to several current examples of minority candidates who were removed from the primary ballot due to errors in their petition cover sheets. (Tr. 51-52). In response, Defendant pointed to three minority candidates currently on the Democratic primary ballot (i.e., John Liu, William Thompson, and Erick Salgado). (Tr. 32-33). Conversely, Defendants offered numerous examples of non-minority candidates, including candidates in the upcoming primaries, who were removed from the ballots because of comparable errors in their cover sheets. (Tr. 32, 52, 54-55). For the reasons stated *infra* in this Opinion, Plaintiffs' argument fails to establish that either the Board's intent or its effect was discriminatory.

[8] An additional issue with Lee's petition was addressed in the Article 16 proceeding. Specifically, a citizen challenger disputed the validity of Lee's petition signatures. (Tr. 9-11). The Board reviewed Lee's signatures and determined that only a portion of them were valid, a determination with which Lee continues to disagree. (Tr. 9-13, 15). Because Lee's name had already been removed from the ballot, the challenge did not proceed. (Tr. 8). Lee withdrew from the Article 16 proceeding before the Board's report summarizing its review of the petition signatures could be submitted to the special referee. (Tr. 9). Significantly, however, the validity of the signatures is not at issue in this action.

The Board's procedures, combined with the Article 16 judicial review, provided adequate process. In *Rivera–Powell* v. *New York City Bd. of Elections,* the Second Circuit held that a candidate's due process rights were not violated where she was afforded the opportunity to bring an Article 16 proceeding to validate her petition, and was given the opportunity to voice her position at a hearing before the Board at which she was represented by counsel. 470 F.3d at 466-67 (collecting cases). Courts in this District have found that "[e]ven in the absence of an opportunity to be heard prior to a [Board] decision … the statutory provision for an expedited review of that determination by the New York Supreme Court provides adequate pre-deprivation review and satisfies due process requirements." *Murawski* v. *Pataki,* 514 F. Supp. 2d 577, 586 n.5 (S.D.N.Y. 2007) (citing *Cornett* v. *Sheldon,* 894 F. Supp. 715, 727 (S.D.N.Y. 1995) (noting that N.Y. Election Law § 16–102 affords adequate due process)); *see also Iwachiw* v. *New York City Bd. of Elections*, No. 12 Civ. 3520 (JMF), 2013 WL 3110839, at *3 (S.D.N.Y. June 20, 2013) (holding that a candidate's due process rights were not violated because the Board's procedures, combined with Article 16 judicial review, satisfied due process, and that "[w]here, as here, a plaintiff fails to utilize the available post-deprivation remedy, he may not bring a claim for a procedural due process violation").

Lee's procedural due process rights were satisfied by the Board's procedures and the same Article 16 review that was found to be adequate in *Rivera-Powell, Murawski, Cornett,* and *Iwachiw.* The fact that Lee later discontinued his Article 16 proceeding is immaterial for the purposes of the

8

due process analysis. What matters is that Lee *could* have, and did, take advantage of the post-deprivation process. *Rivera-Powell*, 470 F.3d at 468 n.9 (holding that "[t]he fact that [the candidate] failed properly to pursue the state court action, and that it is now too late to do so, does not affect our due process analysis" (quoting *Giglio* v. *Dunn,* 732 F.2d 1133, 1135 (2d Cir. 1984) (holding that if a state law remedy gives a party "a meaningful opportunity to challenge" the state's action, "he [is] not deprived of due process simply because he failed to avail himself of the opportunity"))). Because Plaintiffs have not alleged a due process violation separate and apart from that identified by Lee, and because the Court finds that Lee's due process rights were not violated, the Court concludes that Plaintiffs are unlikely to succeed on this claim. *See id.* at 468.

### b. First Amendment Claims

Plaintiffs also allege that the Board violated their First Amendment free association rights by removing Lee from the primary ballot. Courts in this District have recognized that denial of ballot access can effect a deprivation of the First Amendment right to free association. *See, e.g.*, *Faulkner* v. *Sadowski*, 486 F. Supp. 1261, 1264 (S.D.N.Y. 1980). The Supreme Court, however, has recognized that all election laws impose at least some burden on the expressive and associational rights protected by the First Amendment. *See Burdick v. Takushi,* 504 U.S. 428, 433 (1992). Relying on *Burdick*, the Second Circuit has explained:

> To determine whether a particular burden rises to the level of a constitutional violation, we weigh the "character and magnitude" of

> a plaintiff's injury against the state's interests supporting the regulation. The level of scrutiny we apply to the state's justification depends on the rule's effect on First Amendment rights. Logically, the greater the burden, the more exacting our inquiry. Where the burden on a plaintiff's First Amendment rights is trivial, a rational relationship between a legitimate state interest and the law's effect will suffice.

*Maslow* v. *Board of Elections in City of New York,* 658 F.3d 291, 296 (2d Cir. 2011) (internal quotations and citations omitted) (citing *Burdick,* 504 U.S. at 434).

The Second Circuit has further held that "there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality." *Rivera-Powell*, 470 F.3d at 468. In the instant case, as in *Rivera-Powell,* Plaintiffs' First Amendment claims are "virtually indistinguishable" from their due process claims (and fail for the same reason), because they arise from the same alleged violation, namely, Plaintiff Lee's exclusion from the primary ballot due to errors in two cover sheets. *Id.* Plaintiffs have failed to identify a separate First Amendment violation, and as such, are unlikely to succeed on this claim.

### c. Equal Protection Claims

The Second Circuit has held that "a § 1983 action to remedy errors in the election process allegedly violating the equal protection clause does not exist unless the state action constituted intentional or purposeful discrimination." *Gold* v. *Feinberg,* 101 F.3d 796, 800 (2d Cir. 1996) (quoting *Powell* v. *Power,* 436 F.2d 84, 88 (2d Cir. 1970)); *see also Diaz* v. *N.Y. City Bd. of Elections,* 335 F. Supp. 2d 364, 367 (E.D.N.Y. 2004) (finding that plaintiff's "unsupported

claim beyond her mere allegation of discrimination" failed to allege an equal protection violation).

Thus, Plaintiffs must demonstrate that the Board intentionally discriminated against them, "either by adopting out of [discriminatory] animus policies which are facially neutral but have a ... discriminatory effect, or by applying a facially neutral policy in a ... discriminatory manner." *Rivera–Powell*, 470 F.3d at 470 (citing *Hayden* v. *Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)); *see also Piccolo* v. *N.Y City Campaign Fin. Bd.*, No. 05 Civ. 7040, 2007 WL 2844939 (GBD) (MHD), at *11 (S.D.N.Y. Sept. 28, 2007). "To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi* v. *Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) (citing *City of Cleburne* v. *Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

Because Plaintiffs have offered no facts to demonstrate that the Board acted with intentional discrimination, *see* n.7 *supra*, they cannot establish that their equal protection rights were violated. *See Gelb* v. *Bd. of Elections of City of New York*, No. 97 Civ. 9404 (HB), 1998 WL 386440, at *3 (S.D.N.Y. 1998) (holding that "allegations of erroneous or arbitrary administration of state election laws ... are insufficient to establish a violation of the Equal Protection clause" (citing *Powell,* 436 F.2d at 87)).

### 2. The Balance of Hardships Weighs Against Granting the Preliminary Injunction

The Board has offered numerous, non-discriminatory, and reasonable justifications for the relevant cover sheet requirements. First, the Board

receives thousands of candidate petitions, which it must review within two days. (Tr. 37-38, 43). There are also six recognized political parties in New York State. (Tr. 37). It is reasonable and expedient for the Board to require a candidate to list his or his political affiliation — in essence, to confirm on which party's primary ballot the candidate's name should appear — on the cover sheet. Second, since only candidates or their representatives may file petitions during the "cure period," it is reasonable and understandable that the Board should require an affirmation to that effect in order to "protect[] both the candidate and the public." (Tr. 40). *See Feliciano* v. *Guastella*, 98 A.D.3d 434, 949 N.Y.S.2d 629, *leave to appeal denied*, 19 N.Y.3d 808, 975 N.E.2d 491 (2012) (holding that a petition was properly invalidated for failure to comply with the authentication requirement in Primary Rule C4). Not surprisingly, both of these regulations have been found to be reasonable in this District. *See, e.g., Thomas* v. *New York City Bd. of Elections*, 898 F. Supp. 2d 594, 598-99 (S.D.N.Y. 2012) (denying a mandatory injunction to place a candidate's name on a primary ballot, and holding that the Board's party affiliation and amended cover sheet affirmation requirements were "reasonable and nondiscriminatory").

Plaintiffs argue that Lee's errors were technical, not content-driven, and should thus be overlooked. (*See, e.g.,* Compl. ¶ 14).[9] The Court disagrees.

---

[9]  In arguing that Lee's mistakes were technical rather than substantive, Plaintiffs rely upon *Farrell* v. *Bd. of Elections in City of New York*, No. 85 Civ. 6099 (JES), 1985 WL 2339 (S.D.N.Y. Aug. 20, 1985). *Farrell*, however, is factually inapposite. That court granted a preliminary injunction where the Board had invalidated all signatures in a petition with a cover sheet omission, without first affording a candidate leave to correct

12

New York law is abundantly clear that "[w]hile substantial compliance is acceptable as to details of form, there must be strict compliance with statutory commands as to matters of prescribed content." *Hutson* v. *Bass*, 54 N.Y.2d 772, 774 (1981).  Moreover, New York courts have repeatedly mandated strict compliance with the law requiring that accurate information be provided on the cover sheet.  *See* N.Y. Elec. Law § 16-102; *Malang* v. *Sunderland*, 208 A.D.2d 787, 617 N.Y.S.2d 828, 829 (2d Dep't 1994) (holding that "the failure to include the party name, the title of office, and the name and residence of the candidate in the certificate of nomination rendered that certificate invalid"); *Smith* v. *Mahoney*, 60 N.Y.2d 596, 597 (1983) (omitted title of office sought); *Engert* v. *McNab*, 60 N.Y.2d 607, 608 (1983) (unspecified omission); *see also Friedman* v. *Abrams,* 600 F. Supp. 596 (S.D.N.Y. 1985) (failure to include the candidate's name and address on the nominating certificate rendered the petition invalid).  While it is unfortunate that Lee did not properly correct the errors in the cover sheet and amended cover sheet, it is well accepted that "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Burdick*, 504 U.S. at 440 n.10.

Finally, the Board has offered numerous examples of the hardships it would face were the Court to grant the requested relief, including the substantial expense and logistical difficulty in reprinting (and, in many cases, re-mailing) the primary ballots.  (Tr. 5-6, 33-34).  Plaintiffs counter that they

---

that omission.  *Id.*  In contrast, in the instant action, Lee was afforded two opportunities to file a correct cover sheet, but failed to do so each time.

13

would not be able to vote for Lee, but they have failed to allege that this violates their constitutional rights, as discussed, *supra*. The balance of hardships weighs against granting the mandatory injunction.[10]

## CONCLUSION

For the reasons stated herein, Plaintiffs' request for a preliminary injunction is DENIED. Defendant shall answer or otherwise respond to the Complaint within 30 days from the date of this Order.

SO ORDERED.

Dated: August 16, 2013
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[10] Because Plaintiffs have not demonstrated a substantial likelihood of success on the merits, the Court does not reach the issue of irreparable harm.